2020 IL App (2d) 200131
No. 2-20-0131
Opinion filed November 2, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF MICHAEL S. MAIN, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 17-D-61 |
| | ) | |
| JEANETTE L. MAIN, n/k/a Jeanette L. | ) | |
| Triantafillo, | ) | Honorable |
| | ) | Charles W. Smith, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Zenoff and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1     The petitioner, Michael S. Main (who has been representing himself in this case), was found by the trial court to be indigent and to qualify for a waiver of court fees, costs, and charges, pursuant to section 5-105 of the Code of Civil Procedure (Code) (735 ILCS 5/5-105 (West 2018)). In preparation for his appeal from the judgment dissolving his marriage to the respondent, Jeanette L. Main (now known as Jeanette L. Triantafillo), the petitioner asked the trial court to find that he was entitled to a waiver of the cost of the transcripts he needed for the appeal, including those of the six-day trial.   The trial court initially denied this request.   Upon the petitioner's motion for reconsideration, however, the trial court entered an order certifying the following question:

"When a self-represented litigant has been granted a waiver of fees under 735 ILCS 5/5-105(a)(1), is such litigant entitled to a waiver of court transcript fees under 735 ILCS 5/5-105.5 and Supreme Court Rule 298?"

The petitioner filed a petition for leave to appeal pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). We granted leave and now answer the question in the affirmative.

¶ 2                                I. BACKGROUND

¶ 3      Because the question before us concerns only whether an indigent, self-represented litigant may obtain transcripts without charge, we omit here most of the facts relating to the dissolution trial and judgment. In October 2019, the petitioner filed a notice of appeal challenging the judgment of dissolution and several other orders.[1] On November 8, 2019, the petitioner requested that transcripts of the proceedings on eight dates be included in the record on appeal. The request included a statement that the appeal involved a matter subject to expedited disposition under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018), such as the allocation of parental responsibility and parenting time. A few days later, the petitioner served each of the court reporters who attended the relevant court dates a similar request, along with a copy of the trial court order granting a waiver of court fees, costs, and charges.

¶ 4      On November 14, apparently after having been told that the transcripts would cost about $3000 and that the waiver order did not extend to transcript costs, the petitioner moved to be provided with the transcripts, which he contended were necessary to his appeal, without charge. The petitioner cited sections 5-105 and 5-105.5 of the Code (735 ILCS 5/5-105, 5-105.5 (West

---

[1] That appeal, docket No. 2-19-0972, has been stayed pending the resolution of the certified question in this appeal.

2018)) and Illinois Supreme Court Rule 298 (eff. July 1, 2019). He pointed out that the trial court had found him to be indigent, and he averred that he remained so and was unable to pay the cost of the transcripts. He stated that the trial court had unsuccessfully attempted to locate *pro bono* counsel for him and noted that such counsel could have obtained transcripts without cost under section 5-105.5 of the Code.

¶ 5 The trial court denied the motion. It noted that the parties made conflicting representations about whether, following the entry of the waiver order, the petitioner had accumulated sufficient funds to pay for the transcripts. However, the trial court's denial did not rest on the evidence regarding the petitioner's current financial status. Rather, the trial court denied the petitioner's request because the court administration would have to pay the costs of the transcripts if he did not, and the court believed that no statute or court rule required that result.

¶ 6 The petitioner moved for reconsideration, arguing that the denial of a fee waiver for the transcripts necessary for his appeal violated his constitutional as well as his statutory rights. He noted that some of the orders he wished to appeal essentially suspended his parenting time with his children, implicating his fundamental liberty interest in maintaining a relationship with his children. He argued that the denial of a fee waiver for the transcripts effectively denied him an appeal, as the transcripts were necessary to allow him to raise proper arguments and to support those arguments. The petitioner asked that, if the trial court did not grant him a waiver of the transcript costs outright, in the alternative the trial court certify a question about whether a fee waiver under section 5-105 encompassed the waiver of transcript costs.

¶ 7 In a written ruling, the trial court reconsidered its previous order. Although it did not grant the petitioner's request for a fee waiver, it found that there were substantial grounds for a difference of opinion on whether sections 5-105 and 5-105.5 permitted the petitioner to obtain

transcripts for appeal without payment, despite the fact that he was not represented by a civil legal services provider or *pro bono* attorney. It therefore certified the question set out above. The petitioner then sought leave to appeal pursuant to Rule 308 in order to resolve the certified question, and we granted such leave.

¶ 8                                    II. ANALYSIS

¶ 9                              A. Preliminary Matters

¶ 10    At the outset, we note that the respondent has not filed a brief on appeal.

"In such a situation, our supreme court's decision in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976), normally dictates that a court consider the merits of an appeal if the issues and the record are susceptible to easy decision, but that a court otherwise decide the case in favor of the appellant if the appellant establishes a *prima facie* case for reversal." *Mahoney v. Gummerson*, 2012 IL App (2d) 120391, ¶ 10 (citing *Grundy v. Lincoln Park Zoo*, 2011 IL App (1st) 102686, ¶ 3).

However, *Talandis* does not apply in an appeal such as this that considers a certified question, because then our task is to correctly answer the question presented, and thus we may not simply rule in favor of an appellant who establishes a *prima facie* case. *Id.* ¶ 11. "*Talandis* is not dispositive because the failure to file an appellee's brief does not establish or corroborate the answer to a certified question. A certified question is a question of law that is not susceptible to either a default or a *prima facie* showing of error." *Id.* We therefore address the certified question on its merits, regardless of whether the issue is simple. *Id.*; *Grundy*, 2011 IL App (1st) 102686, ¶ 3. Our review is *de novo* because we are presented solely with a question of law. *Mahoney*, 2012 IL App (2d) 120391, ¶ 11.

¶ 11    A second preliminary issue that arose during our consideration of this appeal is whether leave to appeal pursuant to Rule 308 was properly granted.    Rule 308 permits a trial court to certify a question of law to the appellate court:

> "When the trial court, in making an interlocutory order not otherwise appealable, finds that the order [1] involves a question of law as to which [2] there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved."    Ill. S. Ct. R. 308(a) (eff. Oct. 1, 2019).

The first two requirements are not in question.    The question before us is purely legal in nature, simply requiring statutory interpretation.    And a "substantial ground for difference of opinion" exists where, *inter alia*, the question of law has not been directly addressed by the appellate or supreme court.    *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 32.    There is almost no existing law on the issue posed by the certified question.    Thus, the first requirements are met. The final requirement—that the appellate court's resolution of the issue will materially advance the ultimate termination of the litigation—is also met here, although that might seem less clear.

¶ 12    It is true that our resolution of the certified question will not advance the entry of the dissolution judgment, as that has already occurred.    Nevertheless, "the litigation" continues to pend in the trial court because the appeal from that judgment requires the preparation of a record. That the litigation continues in the trial court is especially clear here, where the underlying appeal was brought under Illinois Supreme Court Rule 311 (eff. July 1, 2018).    Under paragraph (a)(3) of that rule, the trial court has "continuing jurisdiction for the purpose of enforcing the rules for

preparation of the record and transcript." Ill. S. Ct. R. 311(a)(3) (eff. July 1, 2018).[2] The petitioner specifically identified and requested the preparation of eight transcripts that he believed were necessary for his appeal, but they were not provided because the trial court did not know the answer to the legal question before us now. Thus, our resolution of the certified question is necessary to advance the litigation.

¶ 13 Further, the petitioner cannot move forward with an effective appeal without transcripts. If he attempted to do so, we would almost certainly summarily affirm the judgment because, without an adequate record of the proceedings, we must assume that the trial court's decision accorded with the law and had a sufficient factual basis. *Koppel v. Michael*, 374 Ill. App. 3d 998, 1008 (2007) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)).

¶ 14 Finally, judicial economy and other considerations may support proceeding to answer the question even where the presentation of the question or its qualifications under Rule 308 are imperfect. See, *e.g.*, *In re Estate of Stahling*, 2013 IL App (4th) 120271 (court answered certified question although there was some question whether it would advance the litigation); *Doe No. 2 v. Boy Scouts of America*, 2016 IL App (1st) 152406 (court answered certified question despite improprieties in question, citing judicial economy); *Walker v. Carnival Cruise Lines, Inc.*, 383 Ill. App. 3d 129, 133 (2008) (court answered certified question although it improperly rested on the facts of the case, citing judicial economy); see also *Crim v. Dietrich*, 2020 IL 124318 (problematic certified question answered where it did not have any of the flaws identified in *Rozsavolgyi*; question did not require the resolution of factual predicates or require an application of the law to

---

[2] Because record-preparation matters continue to pend before the trial court, this is an interlocutory appeal.

the facts of the case, answer would not be a provisional or advisory opinion, and question simply involved issue of statutory interpretation); *Sassali v. DeFauw*, 297 Ill. App. 3d 50 (1998) (Justice Thomas, joined by Presiding Justice Geiger, accepted and answered a certified question over dissent by Justice McLaren, arguing that neither prong of Rule 308 was met). Considerations of judicial economy apply with even greater force here, where the underlying appeal involves parenting issues that are subject to expedited resolution.

¶ 15    Here, there is no alternative means to resolve the matters still pending in the trial court relating to the preparation of the record for the underlying dissolution appeal. We conclude that our grant of leave to appeal pursuant to Rule 308 was proper.

¶ 16    Before turning to the certified question, we pause to address one other preliminary matter: its form. In an interlocutory appeal under Rule 308, our review is limited to the question certified by the trial court. *Williams v. Athletico, Ltd.*, 2017 IL App (1st) 161902, ¶ 9. "However, we may limit our consideration of the question as necessary if answering the question as certified would not materially advance the ultimate determination of the litigation." *Id.*; see also *Crawford County Oil, LLC v. Weger*, 2014 IL App (5th) 130382, ¶ 12 (because the question as certified would not materially advance the resolution of the litigation, reviewing court interpreted the question so as to accord with procedural posture of the case).

¶ 17    Here, it is evident that there are certain ambiguities or errors in the trial court's identification of the applicable statutes and rules. For instance, the trial court's reference to "a self-represented litigant [who] has been granted a waiver of fees under 735 ILCS 5/5-105(a)(1)" is not legally precise. Technically speaking, no one can be granted a waiver under that specific subsection, as it merely lists the fees that may be waived but does not itself provide for the waiver of those fees. (The actual granting of a fee waiver is covered in section 5-105(b)(1) (735 ILCS

5/5-105(b)(1) (West 2018)).) But we can readily understand the trial court to be referring to "a self-represented litigant *who has been granted a waiver of the fees listed in* 735 ILCS 5/5-105(a)(1)," a reading that comports with common usage and avoids hyper-technicality. Similarly, the certified question asks only whether such a litigant may have transcript fees waived "under 735 ILCS 5/5-105.5 and Supreme Court Rule 298," mystifyingly omitting any reference to section 5-105, the statute under which the trial court actually granted the petitioner's prior fee waiver. However, as Rule 298 applies to fee waivers under both section 5-105 and section 5-105.5, and all three sources of law must be read together (see *infra* ¶¶ 34-38), we may answer the certified question despite this flaw in wording. We now turn to that task.

¶ 18                                B. The Certified Question

¶ 19     On appeal, the petitioner repeats the arguments he made below, contending that the answer to the certified question must be "yes" under both state law and the United States Constitution. However, our supreme court instructs that courts should take up constitutional questions only when the case cannot be decided on other grounds. *Innovative Modular Solutions v. Hazel Crest School District 152.5*, 2012 IL 112052, ¶ 38. As we find Illinois law sufficient to resolve the certified question, we leave the petitioner's constitutional arguments aside.

¶ 20                                  1. Applicable Law

¶ 21     The waiver of court-imposed charges in Illinois is governed by a constellation of law. Sections 5-105 and 5-105.5 of the Code each apply to different groups of indigent litigants. Section 5-105 applies to all indigent litigants, including self-represented litigants.[3]   Section 5-

---

[3] Section 5-105 requires litigants to submit their own applications for waivers (see 735 ILCS 5/5-105(c) (West 2018)) and thus clearly applies to *pro se* (self-represented) litigants.

105.5 applies only to indigent litigants who are represented by certain types of *pro bono* attorneys.[4] Illinois Supreme Court Rule 298 applies to both groups. As these three sources are essential to our understanding of the issue, we set out the relevant provisions of each.

¶ 22  Under section 5-105 of the Code, "[i]f the court finds that the applicant is an indigent person, the court shall grant the applicant a full fees, costs, and charges waiver entitling him or her to sue or defend the action without payment of any of the fees, costs, and charges." 735 ILCS 5/5-105(b)(1) (West 2018). The "fees, costs, and charges" subject to waiver are defined in section 5-105(a)(1) as

> "payments imposed on a party in connection with the prosecution or defense of a civil action, including, but not limited to: fees set forth in Section 27.1b of the Clerks of Courts Act [(filing fees)]; fees for service of process and other papers *** including service by publication ***; motion fees; charges for participation in, or attendance at, any mandatory process or procedure including, but not limited to, conciliation, mediation, arbitration, counseling, evaluation, 'Children First', 'Focus on Children' or similar programs; fees for supplementary proceedings; charges for translation services; guardian *ad litem* fees; and all other processes and procedures deemed by the court to be necessary to commence, prosecute, defend, or enforce relief in a civil action." *Id.* § 5-105(a)(1).

In order to qualify for waivers of court charges under section 5-105, litigants themselves must submit an application that details their financial status. *Id.* § 5-105(c).

---

[4] Section 5-105.5 applies to litigants represented by civil legal services providers (CLSP) or attorneys in court-sponsored *pro bono* programs. See 735 ILCS 5/5-105.5(b) (West 2018). The CLSP or *pro bono* program must meet certain requirements. *Id.* § 5-105(a).

¶ 23    Section 5-105.5 of the Code provides a procedural shortcut when a litigant is represented by a CLSP or *pro bono* attorney.    The attorney may file a certification that the litigant meets the financial threshold for the waiver, freeing the litigant from the application requirement.    *Id.* § 5-105.5(b).    Section 5-105.5 also contains a slightly different description of the charges that may be waived, stating that "all fees and costs relating to filing, appearing, transcripts on appeal, and service of process shall be waived."    *Id.*

¶ 24    The final source of relevant law is Illinois Supreme Court Rule 298 (eff. July 1, 2019), which applies to all indigent litigants, both self-represented and those with an attorney. Subsection (a) of the rule applies to self-represented litigants, and it provides that a litigant may apply for a waiver of court fees in a civil action under section 5-105 of the Code.    Ill. S. Ct. R. 298(a) (eff. July 1, 2019).    In ruling on such an application, the court must apply the indigency standards set out in that section, and if it determines that the conditions for a waiver are met, "it shall enter an order permitting the applicant to sue or defend without payment of assessments, costs or charges."    Ill. S. Ct. R. 298(b) (eff. July 1, 2019).    Subsection (d) of the rule provides that a litigant represented by a CLSP or *pro bono* attorney may seek a similar waiver pursuant to section 5-105.5 of the Code.    Ill. S. Ct. R. 298(d) (eff. July 1, 2019).    However, the rule provides that, even for litigants with such representation, section 5-105 (not section 5-105.5) sets the limits of the charges to be waived.    See *id.* (if the waiver is granted, it covers "assessments, costs or charges as defined in [section] 5-105(a)(1)").    In sum, Rule 298 provides that section 5-105 defines the scope of fee waivers for both self-represented indigent litigants and those with representation.

¶ 25    As can be seen, these three sources each use slightly different language in describing the costs or charges that can be waived.    Section 5-105.5 appears to be the most pertinent here, as it

expressly provides for the waiver of the cost of "transcripts on appeal." 735 ILCS 5/5-105.5(b) (West 2018). However, this statute does not answer the question before us, because it is directed only to indigent litigants who are represented by a CLSP or *pro bono* attorney, and the petitioner is self-represented.[5] Section 5-105 and Rule 298, which apply to self-represented indigent litigants, do not explicitly list transcript costs as subject to waiver. However, both employ broad language to describe the expenses that may be waived if the applicant is indigent. Section 5-105(a)(1), which lists an extensive array of charges that are covered, expressly states that the list is not exclusive—waivable charges "includ[e], but [are] not limited to" the listed ones—and it includes a catchall provision stating that waivable costs also include "all other processes and procedures deemed by the court to be necessary to commence, prosecute, defend, or enforce relief in a civil action." *Id.* 5/5-105(a)(1) (West 2018). Rule 298 waives all litigation "assessments, costs [and] charges," and explicitly refers to section 5-105 as defining the scope of the fees that may be waived for any indigent litigant. Ill. S. Ct. R. 298(d) (eff. July 1, 2019). We must determine whether court reporter fees for transcripts necessary to an appeal are included within the scope of this provision.

¶ 26                                  2. Plain Language

---

[5] For this reason, if the certified question asked only whether the petitioner's transcript costs could be waived under section 5-105.5, our answer would be "no." However, the certified question also asks whether such costs can be waived under Rule 298. As that rule incorporates the standards and definitions contained in section 5-105, we may consider Rule 298 and section 5-105 as well in answering the question.

¶ 27    In construing a statute, our task is to "ascertain and give effect to the legislature's intent." *Lieb v. Judges' Retirement System*, 314 Ill. App. 3d 87, 92 (2000).   The best indicator of the legislature's intent is the plain language of the statute.   *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003).   "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction."   *Id.*   "However, if a statute is capable of being understood by reasonably well-informed persons in two or more different ways, the statute will be deemed ambiguous.   [Citation.]   If the statute is ambiguous, the court may consider extrinsic aids of construction in order to discern the legislative intent."   *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010).   "The same principles that govern the interpretation of statutes govern the interpretation of rules of this court."   *People v. Tousignant*, 2014 IL 115329, ¶ 8.

¶ 28    Because Rule 298 incorporates section 5-105(a)(1) as the measure of the fees to be waived for indigent litigants, we turn to that provision.   As can be seen, the plain language of section 5-105(a)(1) does not in itself supply a satisfactory or complete answer to the question before us. For instance, it might be debatable whether transcripts for appeal are "necessary to commence, prosecute, defend, or enforce relief in a civil action."   On one hand, an appeal is a proceeding beyond the prosecution or defense of an action in circuit court, and it is doubtful whether an appeal comes within the scope of "enforcing" civil relief, as an appeal usually seeks to challenge a judgment rather than compel compliance with it.   See *In re Marriage of Davis*, 292 Ill. App. 3d 802, 811 (1997) (enforcing means giving effect to or compelling compliance with an order or judgment).

¶ 29    On the other hand, an appeal is simply a continuation of the original case.   Ill. S. Ct. R. 301 (eff. Feb. 1, 1994).   Transcripts of the specific proceedings that resulted in the orders or judgments being appealed can certainly be viewed as "necessary" to a litigant's ability to pursue

the correction of an erroneous judgment through an appeal. It is the responsibility of the appellant to supply a complete record sufficient to permit review of the issues he or she wishes to raise on appeal. *People v. Carter*, 2015 IL 117709, ¶ 19. In the absence of such a record, we must presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Koppel*, 374 Ill. App. 3d at 1008. Any doubts that arise from the incompleteness of the record must be resolved against the appellant. *Carter*, 2015 IL 117709, ¶ 19. This court regularly denies relief to appellants who have failed to include transcripts of the relevant proceedings in the record on appeal, because those transcripts are necessary to enable our informed review. Thus, one could certainly view such transcripts as "necessary" to an indigent litigant. The unaffordability of transcripts would in many cases wholly deprive indigent litigants of the ability to bring an effective appeal.

¶ 30 Because reasonable persons could understand the statute in different ways, it is ambiguous. *Solon*, 236 Ill. 2d at 440. The plain language of section 5-105 standing alone does not answer the certified question, and we must seek further.

¶ 31 3. Harmonization and Statutory Purpose

¶ 32 If a statute is ambiguous, the court may consider other aids of construction to discern the legislative intent. *Id.* "One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole," and thus "words and phrases must be interpreted in light of other relevant provisions of the statute." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 197 (2007). Further, under the doctrine of *in pari materia*, "where different statutes touch on the same or related subject matter, we consider them together so as to render a harmonious result." *State Farm Mutual Automobile Insurance Co. v. Burke*, 2016 IL App (2d) 150462, ¶ 39. "A court may also consider the reason for the statute, the problems it seeks to remedy, the purposes to be achieved, and the

consequences of interpreting the statute one way or another." *Sperl v. Henry*, 2018 IL 123132, ¶ 23; *Solon*, 236 Ill. 2d at 440-41.

¶ 33    Applying these principles here, we conclude that the cost of transcripts necessary for an appeal is within the "fees, costs, and charges" that may be waived for indigent litigants, regardless of whether the litigant is represented by counsel under section 5-105.5 or is a self-represented applicant under section 5-105.

¶ 34    We begin by reading sections 5-105 and 5-105.5 of the Code and Rule 298 together, as we must.    See *J.S.A.*, 224 Ill. 2d at 197; *Burke*, 2016 IL App (2d) 150462, ¶ 39.    Viewed together, it is clear that they form a single scheme governing the waiver of litigation costs for indigent litigants.

¶ 35    Section 5-105 is the original source.    First enacted in 1845, it has from its inception evinced a concern that indigent litigants be able to access the courts in the same manner as those with greater financial resources:

> "If any court shall, before or after the commencement of any suit, be satisfied that the plaintiff is a poor person, and unable to prosecute his or her suit, and pay the costs and expenses thereof, they may, in their discretion, permit him or her to commence and prosecute his or her action, as a poor person; and thereupon such person shall have all the necessary writs, process and proceedings, as in other cases without fees or charge."    Rev. Stat. 1845, ch. 26, § 3.

In its current form the statute is lengthy, comprehensively addressing the fees subject to waiver; eligibility for such waivers; matters that must be included in the application for such waivers; the manner of granting applications; a trial court's power to grant partial waivers, implement repayment plans, and appoint counsel; public-notice requirements about the availability of such waivers; and several other matters.    See 735 ILCS 5/5-105 (West 2018).

¶ 36    Section 5-105.5 was added almost 150 years later in 1994, after the advent of government-regulated civil legal assistance programs.    Comparatively brief, its primary function is to permit a procedural shortcut, freeing indigent litigants from the obligation to complete their own financial affidavits when they are represented by attorneys from qualifying programs who can attest to their financial status.    See *id.* § 5-105.5(b).

¶ 37    Rule 298 was adopted in 1967.    As it predated the enactment of section 5-105.5, it originally tracked only the provisions of section 5-105.    See Ill. S. Ct. R. 298 (eff. Jan. 1, 1967). After section 5-105.5 was added, Rule 298 was amended to cover that statute as well.    See Ill. S. Ct. R. 298 (eff. Nov. 1, 2003).

¶ 38    Nothing in this statutory scheme demonstrates any intent, by either the legislature or the supreme court, to treat *pro se* indigent litigants less favorably or even differently than those who are represented by CLSP or *pro bono* attorneys.    To the contrary, several provisions demonstrate an intent that the two groups of indigent litigants should receive the same benefits and the same access to the courts.    For instance, section 5-105(h-5) provides that all costs that would be waived for indigent *pro se* litigants under section 5-105 should also be waived for indigent litigants represented by counsel under section 5-105.5.    See 735 ILCS 5/5-105(h-5) (West 2018) (parties represented under section 5-105.5 may sue or defend without paying "fees, costs, and charges," as defined in section 5-105(a)(1)).    Further, notwithstanding the slightly different description in section 5-105.5(b) of the charges that may be waived for indigent litigants represented by counsel, Rule 298(d) mandates that such litigants receive the same waiver of charges as *pro se* indigent litigants.    See Ill. S. Ct. R. 298(d) (eff. July 1, 2019) (the charges that litigants represented under section 5-105.5 are freed from paying are those "defined in 735 ILCS 5/5-105(a)(1)").

¶ 39    In seeking to shed light on the scope of the fee waiver, we "may also consider the reason for the statute, the problems it seeks to remedy, the purposes to be achieved, and the consequences of interpreting the statute one way or another." *Sperl*, 2018 IL 123132, ¶ 23. Here, the purpose of these sources of law is to ensure that indigent litigants are able to proceed on the same footing as those with greater financial resources in asserting, defending, and enforcing their rights. In light of this purpose, we agree with the petitioner that it would be anomalous to allow indigent litigants represented by counsel under section 5-105.5 to receive without charge transcripts necessary for an appeal but flatly deny that same statutory benefit to *pro se* litigants who are equally impoverished.

¶ 40    Viewing the relevant laws and rules as a whole, the slightly different language used in section 5-105.5(b) cannot be seen as establishing better treatment for indigent litigants who are fortunate enough to have counsel. Rather, it must be seen as simply a newer and briefer rephrasing of the waivable charges set out in the original cost-waiver provision, section 5-105(a)(1). As such, it clarifies the legislature's intent that the charges waivable under section 5-105 include the cost of transcripts necessary for an appeal.

¶ 41    We also note that Rule 313(g) provides that fees in reviewing courts may be waived on the same terms as in the trial courts. Ill. S. Ct. R. 313(g) (eff. Jan. 1, 2020) ("the provisions of Rule 298 shall apply in the reviewing court"). Rule 313(g) is not directly applicable to the question before us because transcript costs are imposed by the trial court during the preparation of the record for appeal, not by the appellate court. (This is why the form application for the waiver of court fees in the appellate court notes that transcript costs are not waivable by the appellate court. As they are trial court fees, an applicant must seek the waiver of such fees from the trial court.) However, Rule 313(g) makes it clear that the supreme court envisioned that the costs of an appeal

should not present a barrier to an indigent litigant. Our answer to the certified question comports with and supports that goal.

¶ 42    Our reading of Rule 298 and section 5-105 as providing for the waiver of the cost of transcripts for an appeal is buttressed by one of the few cases to consider this issue, *Sims v. Sims*, 21 Ill. App. 3d 61 (1974). *Sims* concerned the interaction between those cost-waiver laws and local circuit court rules, which required litigants seeking a divorce to present the court with a certified transcript of the prove-up hearing as a precondition to the entry of the final decree. *Id.* at 62. The plaintiff in *Sims* filed a verified application to proceed as a poor person under Rule 298 and the predecessor of section 5-105 (Ill. Rev. Stat. 1971, ch. 33, § 5). *Sims*, 21 Ill. App. 3d at 61. The trial court granted the application, and the plaintiff filed her complaint and served the defendant without charge. The defendant did not appear and was defaulted, and the matter was proved up at a hearing. But the plaintiff could not obtain the divorce decree because she could not afford the cost of the hearing transcript. She filed a motion asking that the trial court either waive the requirement of a certified transcript or order the transcript to be provided without charge to her. The trial court denied the motion, struck the testimony taken at the hearing, and dismissed the case for want of prosecution because the plaintiff could not present the required certified transcript. *Id.* at 62.

¶ 43    On appeal, the reviewing court held that, when a divorce plaintiff has been granted the ability to proceed as a poor person, the local rules requiring the filing of a certified transcript must be read in harmony with the cost-waiver statute and thus the certified transcript must be provided to the plaintiff without charge. *Id.* at 63. In so holding, the reviewing court found it unnecessary to reach the constitutional and other arguments raised by the plaintiff. The reviewing court

reversed the order dismissing the case and remanded with directions for the necessary transcript to be provided without charge. *Id.* at 62-63.

¶ 44 The question confronting the court in *Sims* is not identical to the one before us now: *Sims* was concerned more with whether a requirement imposed by local rules must yield to the directives of the cost-waiver statute and Rule 298. Nevertheless, its finding that transcript costs are subject to waiver under those laws is certainly relevant here. And although *Sims* involved a transcript needed for the entry of judgment in the circuit court rather than for an appeal, the function of the transcript at issue in *Sims* is almost identical to the trial transcripts requested here: a record of the essential proceeding in the case. *Sims* confirms our conclusion that the cost of transcripts necessary for an appeal may be waived for self-represented litigants, just as for those who are represented by CLSP or *pro bono* attorneys.

¶ 45                     C. Scope of the Answer to the Certified Question

¶ 46 We have determined that the answer to the certified question is "yes": a self-represented litigant who has been granted a waiver of fees under section 5-105 is entitled to a waiver of transcript costs under Rule 298, which provides that waivable fees are those set out in section 5-105(a)(1). However, the plain language of section 5-105(a)(1) imposes a limit on the waiver of fees and costs—fees and costs are waived only when "deemed by the court to be necessary." Thus, courts need not fear that self-represented indigent litigants will now be able to obtain any transcript they desire, regardless of whether it is necessary for the resolution of a given issue.[6]

---

[6] The power of a trial court to review requests for transcripts also extends to requests made by CLSP or *pro bono* attorneys under section 5-105.5. Although ordinarily courts may rely on the professional judgment of such attorneys as a restraint on requests for transcripts, nothing in

Instead, the restriction that the cost to be waived must relate to a process or procedure "deemed by the court to be necessary" itself suggests a process requiring a self-represented litigant to identify which transcripts she or he believes are necessary, and it recognizes the ability of the trial court hearing the case to decide which of those transcripts are in fact necessary. In the case of an appeal, necessary transcripts include those that are necessary to allow us to review the issues the litigant wishes to raise. *In re Linda B.*, 2017 IL 119392, ¶ 43 (noting the obligation of the appellant to supply a record sufficient to permit review of any claimed errors). Section 5-105(a)(1)'s language empowers a trial court, in its discretion, to hold a hearing on an indigent litigant's request for transcripts (although it need not do so in every case if it has sufficient information to rule).

¶ 47     Thus, a more complete answer to the certified question is: "Yes, when a self-represented litigant has been granted a waiver of fees under 735 ILCS 5/5-105, such litigant is entitled, under Rule 298 (and by reference, section 5-105), to a waiver of fees for those transcripts that the trial court deems are necessary for the civil action, including on appeal."

¶ 48                              III. CONCLUSION

¶ 49     We answer the question certified by the circuit court of Lake County in the affirmative, as stated above. Upon remand, the circuit court must promptly determine which transcripts are

---

section 5-105.5 abrogates courts' inherent power to restrict "free" transcripts to those that are necessary. Indeed, as section 5-105 waives only necessary transcript costs, and Rule 298(d) provides that waivable charges are those identified in section 5-105 (even for indigent litigants represented by counsel), the requirement that transcripts be deemed necessary in order for their costs to be waived applies equally to transcripts requested under section 5-105.5.

necessary to the petitioner's appeal from the judgment of dissolution and order those transcripts to be provided to the petitioner without charge to him and without delay.

¶ 50    Certified question answered; cause remanded.

---

**No. 2-20-0131**

---

| | |
|---|---|
| **Cite as:** | *In re Marriage of Main*, 2020 IL App (2d) 200131 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 17-D-61; the Hon. Charles W. Smith, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael S. Main, of Waukegan, appellant *pro se*. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | No brief filed for appellee. |

---